UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-20643-CIV-HUCK/SIMONTON

JOSEPH and ANA ABOUJAOUDE,

    Plaintiffs,
vs.

POINCIANA DEVELOPMENT
COMPANY II, a Florida corporation,
and ERIC T. REARDON,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS AND STRIKE

THIS MATTER is before the Court upon Defendants' Motion to Dismiss and Strike [D.E. #7], filed on April 12, 2007. The Court has reviewed the parties' submissions and is duly advised in the premises.

**I.**     **Facts**[1]

Plaintiffs, Joseph and Ana Aboujaoude (collectively "the Aboujaoudes"), are a married couple who reside in Miami-Dade County, Florida. Defendant, Poinciana Development Company II ("PDC"), is a Florida corporation with its principal place of business in Miami-Dade County, Florida. Defendant, Eric Reardon ("Reardon") is the president of PDC and resides in Miami-Dade County, Florida. The Aboujaoudes have brought this action pursuant to the Interstate Land Sales Full Disclosure Act ("ILSFDA" or "the Act") and various state claims arising from a failed purchase of real property.

On February 8, 2002, the Aboujaoudes entered into an agreement with PDC to purchase real property described as Golden Gates Phase 2, lot 2 block 5 (the "Golden Gates Property"). Under the Golden Gates Property Contract, PDC was to build a five-bedroom, two-and-a-half-bath house in exchange for $194,990.00. In November 2002, PDC informed the Aboujaoudes that it could not fulfill its end of the Contract. Reardon wrote a letter to the Aboujaoudes in which he explained that

---

[1] This statement of facts comes from the Aboujaoudes' Complaint. When evaluating a motion to dismiss, the Court must accept facts stated in the Complaint as true. *Fortner v. Thomas*, 983 F.2d 1024, 1027 (11th Cir. 1993).

PDC was unable to purchase all of the property to be used in the Golden Gate Development. PDC then suggested that it could sell a slightly more expensive lot at a different location.[2] Unlike the Golden Gates Property, PDC actually owned this lot and construction was ready to move forward. The Aboujaoudes agreed.

PDC and the Aboujaoudes entered into a General Release of All Claims in which, in exchange for $5,300.00, the Aboujaoudes released PDC from any liability from any claims related to the failed sale of the Golden Gates Property. PDC never paid the $5,300.00 to the Aboujaoudes.

PDC and the Aboujaoudes then entered into the second agreement for Lot 5 Block 3 of Valencia Grove Estates, located at 20020 SW 132nd Avenue, Miami, FL 33177 (the "Valencia Property"). PDC agreed to construct the house in exchange for an initial deposit of $11,350.00 and a total price of $227,000.00.

As time went by without any signs of construction, the Aboujaoudes called and wrote on numerous occasions to PDC to inquire about the delay, but did not receive any satisfactory answers. Eventually, in May 2005, PDC indicated that construction would begin within 20 days. It did not. Over the course of the next year, The Aboujaoudes received numerous excuses from Reardon and his assistants and promises that construction was "just about to start."

In May 2006, PDC and the Aboujaoudes entered into an Addendum to the Valencia Property Contract which required PDC to complete construction by April 7, 2007. According to the Aboujaoudes, the Addendum also served to limit their recovery rights to a refund of the deposit. In January 2007, Reardon contacted the Aboujaoudes and told them that because prices had gone up, the house could not be delivered unless they agreed to pay an additional $100,000.00. Reardon said that if the request was refused, PDC's private lender would foreclose. In the alternative, Reardon offered to return the deposit. The Aboujaoudes declined the offers, instead bringing this lawsuit.

The Aboujaoudes have filed a seven-count complaint against PDC and Reardon for violation of the ILSFDA, 15 U.S.C. § 1701, *et seq.* (Count I), against PDC for breach of contract (Count II), a declaratory judgment as to the enforceability of the General Release (Count III), against PDC and Reardon for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count

---

[2] In the alternative, PDC offered to return the Aboujaoudes' initial deposit.

IV), against PDC and Reardon for fraud (Count V), against Reardon for fraud (Count VI), and against PDC for specific performance (Count VII).

## II. Discussion

### A. Standard of Review

In reviewing a motion to dismiss, all well-pleaded facts in Plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, ___ (2007) (slip op., at 7-8) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. ILSFDA

Count I of the Aboujaoudes' Complaint alleges various violations of the ILSFDA. Congress passed the ILSFDA in 1968 "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." *Winter v. Hollingsworth*, 777 F.2d 1444, 1447 (11th Cir. 1985). The ILSFDA "imposes detailed disclosure requirements upon land developers and prohibits fraud in interstate land transactions." *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 811 (M.D. Fla. 1987). The Aboujaoudes allege that PDC and Reardon violated § 1703(a) by (1) "failing to place in effect a statement of record pursuant to § 1706;" (2) "failing to furnish a printed property report pursuant to § 1707;" (3) "employing devices, schemes and/or artifices to defraud, specifically the bait and switch and high pressure tactics designed to force [the Aboujaoudes] to agree to paying more money, and relinquishing rights as to completion date and remedies;" (4) "obtaining money by untrue statements such as those that led [the Aboujaoudes] to believe that the original property could be sold to them or that the second property would be completed in a timely fashion;" and (5) "operating in a transaction, practice and/or course of business which operates as a fraud or deceit upon a purchaser." Compl. ¶ 42 (alleging violations of 15 U.S.C. §§ 1703(a)(1)(A)-(B) and 1703(a)(2)(A)-

(C)).

Defendants contend that the Court does not have subject matter jurisdiction over the ILSFDA claims because they are exempt from the Act. Alternatively, Defendants assert that the ILSFDA claims are time-barred under the Act's statute of limitations.[3]

### 1. Subject Matter Jurisdiction

Defendants first contend that the Court lacks subject matter jurisdiction over this action because the Aboujaoudes have no cause of action under the ILSFDA. Not every sale or lease of lots is subject to the ILSFDA. Section 1702 provides several circumstances under which particular land sales are exempt from the Act. For example, the ILSFDA applies only to those sales of improved land where the seller is not obligated to complete construction within two years. Specifically, the "two year completion" exemption provides that the Act applies:

> (a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—
>
> (2). . . the sale or lease of land under a contract *obligating the seller or lessor to erect such a building within a period of two years.*

15 U.S.C. § 1702 (emphasis added). Defendants contend that this exemption applies to the Contracts at issue in this case. Both Contracts for the Golden Gates Property and the Valencia contain the same Paragraph 10, which states that, "[i]f Seller fails to complete the Unit within two (2) years from the date of this Agreement then Seller shall be in default of its obligations hereunder." Defendants assert that this language "plainly provide[s] that the homes contracted for must be completed in two years." Mot. at 4. Thus, Defendants assert that the Contracts fall squarely within the "two-year completion" exemption. The Aboujaoudes, however, point to the remainder of Paragraph 10, which limits purchaser's "sole remedy" to a refund of purchaser's deposit. According to the Aboujaoudes, because of this language limiting potential recovery, Paragraph 10 cannot be read to "obligate" PDC to complete construction within two years.

Thus, the issue for the Court is whether contractual language limiting the buyer's remedy so eviscerates the seller of an "obligation" within the meaning of the Act. This Court has dealt with this

---

[3] Although Defendants did not properly raise the issue in their Motion, only addressing it in their Reply brief, the Court requested additional briefing to determine whether the claims are statutorily barred.

question previously. In *Schatz v. Jockey Club, Phase III, Ltd.*, a condominium seller similarly asserted that it was obligated to complete construction within two years. 604 F. Supp. 537 (S.D. Fla. 1985). Paragraph 9 of the contract in that case limited the purchaser's remedies, stating "Seller shall not be obligated to make, provide or compensate Buyer for any costs, expenses or losses that may result in a delay in the estimated date of occupancy. Such delays shall not cancel, amend or diminish any of the Buyer's obligations undertaken." *Id.* at 541. In addition, the *Schatz* contract contained Paragraph 17, which stated that "Seller's sole liability and obligation to Buyer in the event Seller fails to complete construction or otherwise fails to close this transaction, is the return of the Buyer's deposits together with interest thereon. No action of specific performance of this agreement shall lie in favor of either party." *Id.* Finally, Paragraph 18 of the contract granted the condominium seller the right to reject the buyer for any reason whatsoever and, in the event that it did, the contract would be terminated and of no further force or effect. *Id.* The Court found that those paragraphs 17 and 18 "so qualif[ied] the seller's promise to erect the unit within two years that it cannot be said that the contract 'obligates' Defendant to do so, within the meaning of the Act." *Id.* (citing *Inversiones Romar, S.A. v. Jockey Club Phase III, Ltd.*, No. 82-0695-CIV-JE (S.D. Fla. Sept. 18, 1984) (interpreting an identical contractual provision)). In effect, the Court interpreted the provision not as an obligation to construct within two years, but as granting purchasers an option to cancel the contract and recover the deposit in the event that the unit was not ready for occupancy within two years. *Schatz*, 604 F. Supp. at 542 (noting that such an obligation was no different from that which the Act itself already imposed upon the seller).

Thus, in order to qualify for the "two-year completion" exemption, the seller must have an unconditional commitment to complete construction within two years. This prevailing view has been applied uniformly. *See Eaton v. Dorchester Development, Inc.*, No. 81-1615-CIV-EPS (S.D. Fla. Nov. 26, 1984) (adopting the court's reasoning in *Dorchester Development, Inc. v. Burk*, 439 So.2d 1032 (Fla. 3d DCA 1983) ("Where the seller is *obligated* to complete by a time certain, the purchaser is not limited, as here, to the remedy of rescission, but he may affirm the contract and seek damages") (emphasis added)). The interpretation is buttressed by the guidelines promulgated by the United States Department of Housing and Urban Development's Office of Interstate Land Sales Registration, which state:

> Contracts that permit the seller to breach virtually at will are viewed as unenforceable

> because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for any reason within the seller's control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct.

*Samara Development Corp. v. Marlow*, 556 So.2d 1097, 1099 (Fla. 1990) (quoting Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 49 Fed. Reg. 31,375, 31,378 (1984)).

In this case, Paragraph 10 limits the Aboujaoudes' "sole remedy" to the return of their deposit. Such language eliminated the Aboujaoudes' ability to enforce PDC's promise to complete construction within two years.

In response to the Aboujaoudes' argument, Defendants first assert that the Addendum to the Contract for the Valencia Property provides for different remedies that may be invoked by the Aboujaoudes in the event of failure to complete construction by April 7, 2007. This argument fails because the Addendum only deleted and replaced the second-to-last sentence of Paragraph 10, dealing with the completion date, leaving the "sole remedy" provision in tact. Despite Defendants' contention that the Addendum provides additional remedies, none are apparent from the face of the Contract. Instead, the Addendum merely lays out with more specificity that the purchaser must either rescind the Contract or wait until construction is completed. Thus, the Addendum did not cure the fact that the Contract did not unconditionally commit Defendants to complete construction within two years.

Defendants next contend that the provision in Paragraph 10 is "far different" from the provisions in *Schatz*. Although the Court agrees that Paragraph 10 is not as explicit as the *Schatz* provisions, this does not alter the conclusion. The decision in *Schatz* did not hinge on the fact that there were multiple exclusions imposed on the Purchaser, as Defendants argue. Instead, the decision rested on the fact that § 1702(a)(2) has been interpreted to require an "unconditional commitment" to complete construction within two years. By limiting the Aboujaoudes to the sole remedy of a returned deposit, Defendants did not make such an unconditional commitment. Because the Aboujaoudes did not have the ability to seek damages or specific performance within the terms of Paragraph 10, Defendants cannot be said to have been "obligated" to complete construction within two years. Accordingly, Defendants are not exempt from the provisions of the ILSFDA by virtue of

-6-

§ 1702(a)(2), leaving the Court with jurisdiction over this case.

### 2. Statute of Limitations

Defendants next assert that even if the Aboujaoudes have properly alleged a violation of the ILSFDA, those allegations are time-barred. 15 U.S.C. § 1711(a) states that no action shall be maintained under the Act with respect to:

> (1) a violation of subsection (a)(1) or (a)(2)(D) of section 1703 of this title more than three years after the date of signing of the contract of sale or lease; or

> (2) a violation of subsection (a)(2)(A), (a)(2)(B), or (a)(2)(C) of section 1703 of this title more than three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.

As noted above, the Aboujaoudes have brought claims pursuant to several provisions of § 1703(a).[4] Thus, for those claims brought pursuant to § 1703(a)(1)(A) and (B), the § 1711(a)(1) limitations period governs. For the remaining claims brought pursuant to § 1703(a)(2)(A), (B) and (C), the § 1711(a)(2) limitations period governs. The Court will address these two sets of claims in turn.

### a. Claims under § 1703(a)(1)(A) and (B)

With respect to the (a)(1) nondisclosure claims, the three-year statute of limitations begins to run from the date of signing of the Contract. § 1711(a)(1). The Aboujaoudes filed their complaint in this matter on March 12, 2007. To be within the limitations period, the Aboujaoudes must have entered into their Contracts with Defendants no earlier than March 12, 2004.

The parties entered into the Golden Gates Property Contract on February 8, 2002, the Valencia Property Contract on November 11, 2002,[5] and the Addendum to the Valencia Property

---

[4] In their Complaint, the Aboujaoudes broadly invoked § 1703(a) before specifying five different ways in which Defendants violated the statute. Those allegations track the language of the specific provisions of §§ 1703(a)(1)(A)-(B) and 1703(a)(2)(A)-(C). Although the Aboujaoudes failed to segregate the claims into separate counts as is required by Rule 10 of the Federal Rules of Civil Procedure, the Court will address them as separate claims.

[5] In their Reply, Defendants state that the Valencia Property Contract was entered into on either February 8 or 11, 2002. Indeed, it is evident from the face of the Valencia Property Contract that February 8, 2002 is the signature date. However, the language "REVISED NOVEMBER 11, 2002" appears at the top of the document. This date is supported by the surrounding facts of the case, which suggest that the Valencia Property Contract was entered into only after Defendants indicated in November 2002 that they were unable to procure the Golden

Contract on May 9, 2006. It is facially plain, and the Aboujaoudes do not appear to contest, that any (a)(1) claims based on the Golden Gates Property Contract are time-barred. The thornier issue is whether the (a)(1) claims based on the original Valencia Property Contract are time-barred.

Defendants contend that the Valencia Property Contract was signed before March 12, 2004, and claims under it are thus explicitly time-barred by the terms of § 1711. Further, they contend that the Addendum does not extend the period of time within which to bring suit as the statute of limitations had already expired.[6] The Aboujaoudes, however, assert that the adoption of the Addendum created a new contract, and thus, a new limitations period. The Aboujaoudes allege that the Addendum adopts the terms of the expired Contract and therefore constitutes a new contract. In support, they point to PDC's April 26, 2006 letter to the Aboujaoudes, which states, "[b]ecause we intend to fully honor the terms of which you entered into this agreement, we have enclosed an Addendum to act as an extension of those terms. This will afford you the continued protection of a proper contract with [PDC], while we utilize the additional time to complete your home." Pl.'s Supp. Reply, Ex. E. The Aboujaoudes assert that it was the intention of all parties to enter into a new contract with a new limitations period.

The central issue for the Court to determine, therefore, is what effect the Addendum has upon the PDC's reporting requirements under § 1703(a)(1). Upon review of the Addendum, it appears to do nothing more than extend the time for Seller to complete construction of the Valencia Property. *See* Compl., Ex. E ("Seller wishes to extend the timeframe in which the Seller is required to complete the Unit to April 7, 2007"). The Addendum further states that "[t]his Addendum . . . is effective February 7, 2004 . . . and attached to and made part of the [Valencia Property Contract]." As noted above, the Addendum only alters the second-to-last sentence of Paragraph 10. Beyond that, it did not change the property that the Aboujaoudes sought to purchase or in any other

---

Gates Property.

[6] Defendants cite to *Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594, 597 (4th Cir. 1976), in support of this contention. That case, however, considered whether the applicable statute of limitations should be tolled. With respect to their § 1703(a)(1) claims, the Aboujaoudes do not seek equitable tolling. Rather, they contend that the Addendum created a new contract. Indeed, the Eleventh Circuit has indicated that equitable tolling is unavailable to the limitations period in § 1703(a)(1). *Cook v. Deltona Corp.*, 753 F.2d 1552, 1562 (11th Cir. 1985).

way change the terms of the Valencia Property Contract. The Addendum, by its own terms, is attached to and made a part of the Valencia Property Contract, but is not itself a new contract. On May 9, 2006, when the Aboujaoudes signed the Addendum, the statute of limitations for the (a)(1) claims under the Valencia Property had already long-expired.

Although this situation appears unique, several Florida cases are instructive.[7] First, in *J. Allen, Inc. v. Castle Floor Covering, Inc.*, 543 So.2d 249 (Fla. 2d DCA 1989), the court construed addenda to a contract as a compromise and settlement of the parties' dispute. "By entering into the addenda, any rights and duties the parties had at that moment were merged into their settlement agreement, unless stated otherwise." *Id.* at 251. In this case, the sole purpose of the Addendum was to revive the earlier Contract by extending the construction deadline to a later date. Even if the Addendum merged the rights and duties of the parties from the Valencia Property Contract, the Aboujaoudes no longer had a cause of action under the (a)(1) nondisclosure claims. That right had expired in November 2005.

*Avatar Development Corp. v. De Pani Const., Inc.*, 834 So.2d 873, (Fla. 4th DCA 2002), is also instructive. The court, considering addenda to a termination clause, found that all the terms of the original agreement that did not directly conflict with the addenda remained in full force and effect, incorporated in the addenda. *Id.* at 875 (noting that "[a]ll terms in the Master Contract and addenda can co-exist without conflict; therefore, there is no need to elevate one provision over another"). This conclusion rebuts the Aboujaoudes' theory that the Addendum created an entirely new contract, re-starting the running of a new limitations period. The Addendum was crafted to supplement the Valencia Property Contract, not to abrogate it. The Addendum did not in any way address any of the substance of the original Contract. Indeed, the Addendum does not appear to create any new obligations such that it could even be considered a contract for the sale or lease of land within the meaning of the ILSFDA. Unlike an addendum that would operate as a novation of a contract by setting forth new rights and obligations, this Addendum has done absolutely nothing to impact those (a)(1) disclosure rights that had already expired.

Thus, the Court rejects the Aboujaoudes' argument that the Addendum created a new statute

---

[7] The parties have not addressed what law the Court should apply to this issue. Because this issue concerns the interpretation of a contract between two Florida residents that was entered into in Florida, the Court will apply Florida law.

of limitations for their nondisclosure claims. The Aboujaoudes' cause of action for Defendants' alleged failure to furnish a statement of record or a printed property report expired three years after the signing of the Valencia Property Contract. Accordingly, the Aboujaoudes' (a)(1) nondisclosure claims are time-barred.

### b. Claims under § 1703(a)(2)(A), (B) and (C)

With respect to the (a)(2) fraud claims, the three-year statute of limitations begins to run from the date of the discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.

Although it appears that the limitations period may have run, the Aboujaoudes contend that their (a)(2) claims remain actionable under the theory of equitable estoppel. "Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." *Cook*, 753 F.2d at 1563 (citing *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1043, n. 7 (10th Cir. 1980) (internal citations omitted)). The Aboujaoudes allege precisely that circumstance in this case. They argue that Defendants lulled them into not filing suit in order to increase their relative bargaining power. The Aboujaoudes point to several instances where they indicated that they might pursue legal action. In response, Defendants insisted that construction would begin imminently. The Aboujaoudes thus request that the Court defer ruling on whether (a)(2) claims are time-barred until the facts are more fully developed.

Defendants, as noted above, failed to distinguish between the distinct types of claims alleged under the ILSFDA by the Aboujaoudes. Thus, as far as the (a)(2) claims, Defendants again argue that they are facially time-barred and should not be equitably tolled. Defendants have addressed neither the legal basis for equitable estoppel nor the factual assertions of the Aboujaoudes. Accordingly, the Court agrees that a determination of whether equitable estoppel is appropriate in this case requires a thorough examination of the facts than are not yet fully developed. Thus, the Aboujaoudes (a)(2) claims may proceed.

### C. Sufficiency of Fraud Allegations

Next, Defendants contend that Counts V and VI, which assert state actions for fraud, have been insufficiently alleged under the heightened pleading requirement of Rule 9(b). Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

stated with particularity"). Under Florida law, in order to state a cause of action for fraud, a plaintiff must show: (1) a false statement of fact; (2) known by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury. *See, e.g., Nat'l Ventures, Inc. v. Water Glades 300 Condo. Ass'n*, 847 So.2d 1070, 1074 (Fla. 4th DCA 2003).

Defendants assert that the Complaint contains only brief conclusory statements alleging fraud. Mot. at 8-9 (citing Compl. ¶¶ 60, 68). Plaintiffs counter by stating that Defendants have ignored the bulk of the Aboujaoudes claims against them contained in the "Facts Common to All Counts" section. In their Response to Defendants' Motion, the Aboujaoudes recount the various ways that Defendants detailed every aspect of their claims. Upon closer examination, however, it appears that the Aboujaoudes have overstated the actual specificity of their Complaint.

For example, in their Response, the Aboujaoudes state that they accused PDC of engaging in a "bait and switch" scheme by offering one property and switching to another high-priced property. They cite to paragraphs 9 and 11 of the Complaint, which state that "Aboujaoude also received a letter from Reardon, who explained that '[PDC] has been unable to purchase all of the property to be used in the Golden Gates Development . . ." and that "[PDC] told Aboujaoude that while it could not sell the contracted for [sic] property, they could sell a slightly more expensive lot where the sales office was located," respectively. These allegations do not show any intent by PDC or Reardon to fraudulently induce the Aboujaoudes into entering into the Contract for the Valencia Property. They fail to allege any false statement by Defendants or how Defendants intended to induce the Aboujaoudes' reliance thereupon. Likewise, in their Response, the Aboujaoudes state that in their Complaint they accused PDC of leading them to believe that it owned and could sell the Golden Gates Property to induce them into entering into the Contract. In support, they point to paragraphs 8 and 10 of the Complaint, which state "[i]n November of 2002, [PDC] informed Aboujaoude that [PDC] could not perform under [the Golden Gates Property Contract]" and "[PDC] did not own the property that [the Golden Gates Property Contract] purported to sell to

Aboujaoude," respectively.[8] These statements do not allege that PDC or Reardon had made a false statement indicating to the Aboujaoudes that they owned the Golden Gates Property (indeed, Paragraph 12(G) indicates that PDC did not necessarily own the property.)

Although the Aboujaoudes are correct that Rule 9(b) does not require them to provide perfect quotations or exact times, it does require them to allege the basic elements of fraud, which they have failed to do. The Aboujaoudes' failure to plead with specificity the circumstances constituting fraud are compounded in this case because they have alleged fraud against multiple defendants. In order to ensure that Defendants have adequate notice of the charges against them, the Aboujaoudes must indicate with specificity which Defendant, PDC or Reardon, is responsible for which false statements and fraudulent actions. Accordingly, Counts V and VI are dismissed without prejudice for failure to adequately plead fraud under Rule 9(b). The Aboujaoudes shall have leave to amend their Complaint and more specifically state the bases for their fraud counts.[9]

### D. Sufficiency of Allegations Against Reardon

Defendants next contend that the Aboujaoudes have improperly named Reardon as a Defendant. They state that there are no allegations in the Complaint that would provide a basis for piercing the PDC corporate veil to assert a cause of against Reardon as its President. The Aboujaoudes have brought claims against Reardon individually in Counts I, IV, V and VI.

With respect to Count I, the ILSFDA claims, Reardon makes no specific arguments as to why he should not be included in the lawsuit outside of the broad notion that he deserves protection under the corporate veil. To the contrary, the ILSFDA specifically provides that "developers" and "agents" are personally liable for violations of the Act. 15 U.S.C. § 1701(5), (6);[10] *United States*

---

[8] The Aboujaoudes also cite to paragraph 55 of their Complaint, in which they adopt and re-allege the facts common to all counts for the purposes of Count IV. The Court does not see any relevance to this paragraph to the fraud claims.

[9] Because Defendants have only attacked the adequacy of the fraud allegations in Counts V and VI, the Court only addresses those claims. It appears, however, that the Aboujaoudes federal (a)(2) claims may also be subject to the requirements of Rule 9(b). The Aboujaoudes should be mindful of this issue as they consider their Amended Complaint.

[10] The Act defines a "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." § 1701(5). The Act defines an "agent" as "any person who represents, or acts for or on behalf of, a developer in

-12-

*v. Sexton Cove Estates, Inc.*, 526 F.2d 1293, 1301 n. 20 (5th Cir. 1976);[11] *see also McCown v. Heidler*, 527 F.2d 204 (10th Cir. 1975) (officers and directors of corporate land developer civilly liable under Land Sales Disclosure Act).  Because a corporate officer may be liable under the Act, Reardon is properly named as a Defendant in Count I.  (Again, because Defendants do not raise this issue, the Court does not address whether the (a)(2) allegations against Reardon are sufficiently plead.  The Aboujaoudes must, however, sufficiently set forth both the basis for the fraud and Reardon's personal involvement in the Amended Complaint.)

Again, as far as Count IV, which alleges violation of FDUTPA, Reardon makes no specific arguments beyond a statement of the general rule against piercing the corporate veil as to why Reardon may not be named as a Defendant.  FDUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1) Fla. Stat. (1981)   In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a "direct participant" in the dealings.  *Rollins, Inc. v. Heller*, 454 So.2d 580, 582 (Fla. 3d DCA 1984) (noting that it is unnecessary to pierce the corporate veil because individual defendant was a direct participant in the dealings); *see also Anden v. Litinsky*, 472 So.2d 825 (Fla. 4th DCA 1985).

Thus, if the Aboujaoudes have alleged that Reardon was a "direct participant" in the actions which constituted a violation of FDUTPA, he is properly named a Defendant.  Although Reardon is named a Defendant in Count IV, all of the specific allegations contained therein relate to PDC. Compl. ¶¶ 56-58.  The Aboujaoudes have made general allegations against Reardon, but they do not specify his individual actions and how they constitute a violation of FDUTPA.  Thus, the Aboujaoudes claim against Reardon under Count IV is dismissed without prejudice.  In their Amended Complaint, the Aboujaoudes must allege Reardon's direct involvement in any dealings that

---

selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services."  § 1701(6).  Reardon, as President and representative of PDC, clearly falls within the definition of an agent who may be found liable for violations under § 1703(a).

[11] The Eleventh Circuit has adopted as its governing body of precedent the case law of the former Fifth Circuit handed down as of September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

may constitute a violation of FDUTPA.

As noted above, the Aboujaoudes have failed to properly allege their claims of fraud in Counts V and VI with specificity. Thus, those claims have already been disposed of with respect to Reardon. It should still be mentioned, however, that if the Aboujaoudes re-allege the fraud claims in Count V and VI with sufficient particularity, they must also set forth sufficient allegations against Reardon individuallty. "A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong." *Home Loan Corp. v. Aza*, 930 So.2d 814, 815 (Fla. 3rd DCA 2006) (quoting *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363 (Fla. 4th DCA 1981)). "If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort. A contrary rule would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability behind the shield of his representative character, even though the corporation might be insolvent or irresponsible." *Id.* at 815-16. *See also White-Wilson Medical Center v. Dayta Consultants, Inc.*, 486 So.2d 659 (Fla. 1st DCA 1986). The Aboujaoudes must be mindful of this standard before setting forth fraud claims against Reardon as an individual.

### E. Attorney's Fees

The Aboujaoudes have acknowledged that they failed to adequately set forth the statutory basis for their request for attorneys' fees. In doing so, they have sought leave of the Court to amend their Complaint to properly set forth the basis for such fees. Accordingly, the Aboujaoudes' claims for attorneys' fees are dismissed without prejudice. In their Amended Complaint, the Aboujaoudes shall adequately set forth the basis for attorneys' fees.

### F. Economic Loss Rule

Finally, although they improperly raise the issue in their Reply brief, Defendants state that the Aboujaoudes' claims for fraud under Counts V and VI are barred under the economic loss rule. Defendants concede that a claim for fraud in the inducement is not barred by the economic loss rule. In their supplemental Response, the Aboujaoudes indicate that both of their fraud claims were inducement claims. Counts V and VI have already been dismissed without prejudice. The Aboujaoudes are directed to clearly state the nature of the fraud claims if they intend to re-allege

them in an Amended Complaint.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiffs' claims under § 1701(a)(1) are time-barred and therefore DISMISSED WITH PREJUDICE. Plaintiffs' fraud claims in Counts V and VI are DISMISSED WITHOUT PREJUDICE. Plaintiffs' claim against Reardon in Count IV is DISMISSED WITHOUT PREJUDICE. Plaintiffs' claim for attorneys' fees is DISMISSED WITHOUT PREJUDICE. Plaintiffs shall file an Amended Complaint in compliance with this Order on or before **Wednesday, June 20, 2007**.

DONE AND ORDERED in Chambers on June 6, 2007.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Hon. Andrea M. Simonton
All Counsel of Record